# In the United States Court of Federal Claims

No. 15-717C
(E-Filed:  October 30, 2017)

| | |
|---|---|
| CALLAN CAMPBELL, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>THE UNITED STATES, )<br><br>Defendant. ) | Takings; Statute of Limitations, 28 U.S.C. § 2501 (2012); Claims Accrued More Than Six Years Before Suit Was Filed; No Cognizable Property Interest. |

Steve Jakubowski, Chicago, IL, for plaintiffs.  Robert M. Winter and Catherine A. Cooke, Chicago, IL, of counsel.

John J. Todor, Senior Trial Counsel, with whom were Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION

CAMPBELL-SMITH, Judge.

The court has before it defendant's motion to dismiss, ECF No. 8, which is brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC).  This motion has been the subject of extensive briefing by the parties:  (1) Plaintiffs' Response, ECF No. 13; (2) Defendant's Reply, ECF No. 14; (3) Defendant's First Supplemental Brief, ECF No. 19; (4) Plaintiffs' First Supplemental Brief, ECF No. 21; (5) Defendant's Response to Plaintiffs' First Supplemental Brief, ECF No. 22; (6) Plaintiffs' Response to Defendant's First Supplemental Brief, ECF No. 23; (7) Plaintiffs' Second Supplemental Brief, ECF No. 27; (8) Defendant's Response to Plaintiffs' Second Supplemental Brief, ECF No. 28; and, (9) Plaintiffs' Reply in Support of Plaintiffs' Second Supplemental Brief, ECF No. 32.  The parties were also given an opportunity to present oral argument on defendant's motion, which was held on April 12, 2016 by the judge to whom this case was originally assigned.  Interestingly, the parties

never briefed the statute of limitations issue which commands the dismissal of plaintiffs' claims.[1]

This takings case stems from the bankruptcy of General Motors Corporation in the summer of 2009.[2]  The bankruptcy court order encompassing the terms that underlie plaintiffs' claims issued on July 5, 2009.  Sale Order, ECF No. 4-1.  This suit was filed on July 9, 2015.  Because plaintiffs' claims accrued on or before July 5, 2009, they are untimely pursuant to 28 U.S.C. § 2501 (2012), the six-year statute of limitations for takings claims brought in this forum.  As explained more fully below, defendant's motion to dismiss this case on jurisdictional grounds is **GRANTED**.  In the alternative, the complaint would also be dismissed for failure to state a claim upon which relief may be granted.

I.      Standard of Review for Motions Brought Under RCFC 12(b)(1)

When reviewing a complaint to determine its jurisdiction over a plaintiff's claims, this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (citations omitted).  However, plaintiffs bear the burden of establishing subject matter jurisdiction, Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, Reynolds, 846 F.2d at 748 (citations omitted).  If jurisdiction is found to be lacking, this court must dismiss the action.  RCFC 12(h)(3).

II.     Standard of Review for Motions Brought Under RCFC 12(b)(6)

It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy."  Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  When considering a motion to

---

[1]     At oral argument, plaintiffs' counsel asserted that defendant "agrees" with plaintiffs' position regarding claim accrual.  Oral Argument Transcript (Tr.) at 52, 125.  The court's determination of its jurisdiction over a suit does not depend on the parties' view of jurisdictional facts.  See, e.g., Lambropoulos v. United States, 18 Cl. Ct. 235, 237 n.6 (1989) ("The parties cannot stipulate to jurisdiction if it does not otherwise exist." (citing Wheeler v. United States, 3 Cl. Ct. 686, 689 (1983))).

[2]     This court's jurisdiction over takings claims is founded on the Tucker Act, 28 U.S.C. § 1491(a)(1) (2012).  Murray v. United States, 817 F.2d 1580, 1582-83 (Fed. Cir. 1987).

dismiss brought under RCFC 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." <u>Scheuer</u>, 416 U.S. at 236. The court must not mistake legal conclusions presented in a complaint, however, for factual allegations which are entitled to favorable inferences. <u>See, e.g.</u>, <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.") (citations omitted). The allegations of the complaint must state a plausible claim for relief to survive a motion to dismiss filed under Rule 12(b)(6). <u>See, e.g.</u>, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007))).

III.    Statute of Limitations, 28 U.S.C. § 2501

It is well-established that claims in this court must be brought within six years of their accrual and that this time limit is jurisdictional. <u>See, e.g.</u>, <u>Young v. United States</u>, 529 F.3d 1380, 1384 (Fed. Cir. 2008) (citing 28 U.S.C. § 2501 and <u>John R. Sand & Gravel Co. v. United States</u>, 552 U.S. 130, 133-39 (2008)). "It is a plaintiff's knowledge of the facts of the claim that determines the accrual date." <u>Id.</u> at 1385 (citations omitted); <u>see Hopland Band of Pomo Indians v. United States</u>, 855 F.2d 1573, 1577 (Fed. Cir. 1988) ("[A] cause of action against the government has 'first accrued' only when all the events which fix the government's alleged liability have occurred <u>and</u> the plaintiff was or should have been aware of their existence." (citing <u>Kinsey v. United States</u>, 852 F.2d 556, 557 n.* (Fed. Cir. 1988))). Binding precedent holds that equitable tolling is not available to extend the limitations period in section 2501. <u>John R. Sand & Gravel</u>, 552 U.S. at 133-34, 139.

IV.    Factual Background

The amended complaint provides a detailed narrative of plaintiffs' claims. Distilled to their essence, the takings claims asserted here are as follows:

> The Government's demand that [plaintiffs'] rights to assert successor liability claims against [New General Motors ("New GM")] be extinguished in the [bankruptcy court's] Sale Order violated the Takings Clause of the Fifth Amendment to the United States Constitution[.]

Am. Compl. ¶ 9, ECF No. 4. As a point of logic, for the bankruptcy court to have complied with the government's demand as memorialized in the July 5, 2009 "Sale Order," the demand must have been made prior to the issuance of that order, not afterward. Thus, any government action constituting a "demand" of the bankruptcy court could not have been presented after July 5, 2009, but, at the latest, must have been presented on or before July 5, 2009. Herein lies plaintiffs' statute of limitations problem.

In this background section, the court presents a brief review of the chronology of events asserted in the complaint, as illuminated by the briefs plaintiffs filed in this case and by plaintiffs' representations at oral argument. The court will also discuss the procedural history of the General Motors bankruptcy, but only to the extent that this procedural history provides the necessary facts for the resolution of defendant's motion. The court reserves for the "jurisdictional analysis" section of this opinion its discussion of claim accrual.

A.     Plaintiffs' Claims before the Bankruptcy Court

Plaintiffs are either victims of accidents which occurred while driving General Motors vehicles, or the family members or estates of those accident victims.[3] ECF No. 4, at 8-11. Three specific accidents are referenced in the complaint, although the location of the accidents is not specified. The accident victims resided in Pennsylvania, Louisiana and Utah, respectively. Id. All of the accidents occurred before the General Motors bankruptcy in 2009. Id.

These plaintiffs' legal claims against General Motors might best be described, collectively, as personal injury tort claims, at least until General Motors became the subject of bankruptcy proceedings. Id. at 3; see ECF No. 27, at 10 (describing plaintiffs' claims, pre-bankruptcy, as "underlying personal injury product liability tort claims"). The status of plaintiffs' claims in early 2009, or any details as to where such claims might have been litigated cannot be discerned from the complaint. At oral argument, plaintiffs' counsel asserted that before General Motors' petition for bankruptcy was filed, "most of [plaintiffs'] claims had already been filed . . . [i]n state court." Oral Argument Transcript (Tr.) at 84. Plaintiffs' counsel also asserted that in 2009, final judgment had not issued in favor of a claimant for the vast majority of plaintiffs' personal injury tort claims. Id. at 113.

General Motors ("Old GM") filed its bankruptcy petition on June 1, 2009. ECF No. 4, at 3. By that time, the United States Treasury had provided Old GM with several infusions of cash: (1) $13.4 billion in December 2008; (2) $6 billion on or about March 30, 2009; (3) $2 billion in April 2009; and, (4) $4 billion in May 2009. Id. at 12, 16-18. Soon after the bankruptcy petition was filed, the United States provided additional monies to Old GM, so that the federal secured investment in Old GM reached a level of $52.7 billion. Id. at 22.

---

[3]     The court limits its discussion of plaintiffs' claims to the named plaintiffs in this suit, but does not ignore the fact that this litigation was brought as a class action. Given the court's resolution of defendant's motion to dismiss, plaintiffs' request that their suit be certified as a class action is moot.

Plaintiffs, competing against the United States and other Old GM creditors, were represented in Old GM bankruptcy proceedings by the same counsel that represents them here. Sale Opinion, ECF No. 4-2, at 3. Plaintiffs do not dispute that their claims, in terms of bankruptcy proceedings, were "unsecured." ECF No. 4, at 5-6; see ECF No. 23, at 4 (describing plaintiffs' personal injury tort claims as "unsecured claims against Old GM"). According to the complaint, plaintiffs' claims before the bankruptcy court are "estimated" to have had a value of $300 million. ECF No. 4, at 34-35. Plaintiffs allege that they have received, and will receive, far less than that amount from Old GM. Id. at 3 (alleging that plaintiffs have received "a fraction of their stipulated allowed amount" established during the bankruptcy proceedings). Generally, the complaint estimates that just compensation for these plaintiffs under a takings theory would total no less than $200 million, not counting interest. Id. at 49.

B.     Alleged Coercion by the United States Exerted Upon Old GM and the Bankruptcy Court

Plaintiffs' takings claims rest on allegations that the United States took actions to obtain a particular restructuring of Old GM by the bankruptcy court which disfavored plaintiffs' claims. As a threshold matter, nothing in the complaint alleges a judicial taking by the bankruptcy court itself.[4] Thus, the court has examined the complaint thoroughly for allegations of government action that coerced Old GM and the bankruptcy court into a restructuring of Old GM that disfavored plaintiffs. As a starting point, the court turns to plaintiffs' description of the restructuring of Old GM.

The Old GM bankruptcy effected a sale of "substantially all" of Old GM's assets to "New GM," pursuant to 11 U.S.C. § 363(b),(f) (2012). ECF No. 4, at 3. In this type of sale, a "363 sale," the acquiring entity may, if certain conditions are met, obtain particular assets from the bankruptcy petitioner and, at the same time, avoid some of the liabilities of the petitioner. Id. Pursuant to these provisions, New GM obtained most of Old GM's assets free of plaintiffs' personal injury tort claims, and also obtained these assets "free and clear," 11 U.S.C. § 363(f), of plaintiffs' "successor liability" claims which could have been brought against New GM. Id. at 4-5, 23.

Plaintiffs rely heavily on Michigan state law for their definition of successor liability claims. ECF No. 4, at 26-28; ECF No. 21, at 1-7. In essence, for plaintiffs' purposes a successor liability claim is a personal injury or product liability tort claim that is also viable against a successor corporation that has acquired the assets of the tortfeasor corporation. ECF No. 21, at 6-7.

---

[4]     The court agrees with defendant that binding precedent excludes from this court's jurisdiction claims alleging that a judicial taking occurred in the bankruptcy context. See ECF No. 8, at 26-27 (citing Allustiarte v. United States, 256 F.3d 1349, 1351-52 (Fed. Cir. 2001)).

Generally, the complaint alleges that the United States "demanded that the order approving the [363] Sale (the "Sale Order") include a provision that enjoined [plaintiffs] from pursuing successor liability claims against New GM, and the Bankruptcy Court included precisely such a provision in the [July 5, 2009] Sale Order." ECF No. 4, at 4. The government action that is alleged to have effected the taking is the exertion of the federal government's influence over both Old GM and the bankruptcy court in order to obtain the Sale Order extinguishing plaintiffs' successor liability causes of action. Id. at 21-26, 28-31. The complaint describes the effect of the Sale Order in this heading: "The Sale is Approved by the Bankruptcy Court and the Rights of [Plaintiffs] to Assert Successor Liability Claims Are Extinguished by the Sale Order." Id. at 30.

Referring to the federal government's exertion of influence, the complaint employs forceful language.[5] The government is alleged to have "directed" Old GM to exclude successor liability claims from the assumption of liabilities by New GM. Id. at 21. The government also "went the extra step of conditioning the closing of the [363] Sale" on extinguishing plaintiffs' successor liability claims against New GM. Id. at 26. Further, plaintiffs were "singled out" by the government's "arbitrary demand" that they bear more than their fair share of Old GM's financial problems. Id. at 41, 43. The extinguishment of their successor liability causes of action, which, according to plaintiffs, were property under the Fifth Amendment's Takings Clause jurisprudence, was the "direct and proximate result of the Government's actions."[6] Id. at 48. Applying the analytical framework developed recently by the United States Court of Appeals for the Federal Circuit, plaintiffs' takings claims allege government "coercion" of third party actors, as opposed to a taking which is effected through direct government action. See A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1153-56 (Fed. Cir. 2014) (discussing the "coercion" theory for a takings claim arising in the context of Old GM's bankruptcy).

The complaint's specific references to government coercive action, however, all point to activity that predates the Sale Order issued by the bankruptcy court. These government actions began in the fall of 2008, ECF No. 4, at 12, and achieved a significant milestone by May 30, 2009, id. at 21, when Old GM incorporated the

---

[5]     Plaintiffs' briefs employ similar language. For example, plaintiffs state that the government's demand is effectuated by "the most coercive of means." E.g., ECF No. 13, at 7.

[6]     The parties disagree as to whether plaintiffs' successor liability claims are property so as to support a takings claim. The court addresses this issue when it considers, in the alternative, dismissal of this suit under RCFC 12(b)(6), although defendant frames the issue as plaintiffs' "lack of standing." ECF No. 8, at 25.

successor liability extinguishment provision in the proposed Sale Agreement slated for filing in the bankruptcy court on June 1, 2009.  On June 1, 2009, another milestone was met when the government's proposed conditions for the 363 Sale were incorporated in Old GM's bankruptcy filings that day.  Id. at 22.  A few days later, terms of the Sale Agreement (that would later be incorporated in the Sale Order) were altered to benefit the automobile dealers, not plaintiffs.  Id. at 29.  The finalized version of the Sale Agreement submitted to the bankruptcy court was dated June 26, 2009.  ECF No. 4-1, at 53.

Lastly, just before entering the Sale Order on July 5, 2009, the bankruptcy court held a three-day evidentiary hearing, beginning on June 30, 2009 and ending on July 2, 2009.  ECF No. 4-1, at 2.  Plaintiffs allege that attorneys representing the United States were "on the record" before the bankruptcy court, presumably in briefs and/or at the evidentiary hearing.  ECF No. 4, at 31.  Attorneys for the United States are indeed listed as counsel in the Sale Opinion which also issued on July 5, 2009.  ECF No. 4-2, at 2.  To the extent that coercive government action could have occurred in the context of the three-day hearing, that action would have been completed on July 2, 2009.  Assuming, arguendo, that the United States continued to advocate for the extinguishment of plaintiffs' successor liability claims up until the day the Sale Order issued, those advocacy activities could not have extended past July 5, 2009, when the Sale Order issued.[7]

C.      Subsequent History of the Sale Order and Opinion[8]

The Sale Order filed by the bankruptcy court on July 5, 2009, established, in relevant part, the court's authorization for the 363 Sale, and granted injunctive relief extinguishing plaintiffs' successor liability claims.  ECF No. 4-1, at 1-2, 22-23.  The Sale Opinion, also entered on July 5, 2009, set forth the bankruptcy court's legal analysis of the 363 Sale and, in relevant part, set forth the considered basis for the extinguishment of plaintiffs' successor liability claims.  ECF No. 4-2, at 58-69; see also In re Gen. Motors Corp., 407 B.R. 463, 499-506 (Bankr. S.D.N.Y. 2009) (subsequent history omitted).  According to the complaint, the 363 Sale closed on July 10, 2009.  ECF No. 4, at 33.  Old GM's bankruptcy proceeded thereafter at a more leisurely pace, and a plan for the reorganization of Old GM went into effect on March 31, 2011.  Id.  The court must go beyond the complaint, however, to recount the pertinent litigation history of the Sale Order and Opinion issued on July 5, 2009.  The court notes, as evidence of the scope and

---

[7]     How these facts determine claim accrual in this case will be discussed in the jurisdictional analysis section of this opinion, infra.

[8]     The court takes judicial notice of publicly available judicial opinions in the General Motors bankruptcy litigation.  See, e.g., Church of Spiritual Tech. v. United States, 26 Cl. Ct. 713, 726 & n.26 (1992) (taking judicial notice of proceedings in other courts relevant to the case at bar), aff'd, 991 F.2d 812 (Fed. Cir. 1993) (Table).

complexity of the General Motors bankruptcy, that some portions of this bankruptcy case continue to be litigated today.  See, e.g., In re Motors Liquidation Co., No. 09-50026 (MG), 2017 WL 4417584, at *1 (Bankr. S.D.N.Y. Oct. 4, 2017).

> 1.     Review of the Sale Order and Opinion Sought by Plaintiffs

Plaintiffs concede that they did not seek an immediate stay of the Sale Order from the bankruptcy judge.  ECF No. 13, at 27-28.  Nor did they seek a stay of the Sale Order from the district court.  See In re Motors Liquidation Co., 428 B.R. 43, 50-51 (S.D.N.Y. 2010) (noting that requests for a stay had been filed by another group of plaintiffs with both the bankruptcy court and the district court, but that the "Campbell Appellants," i.e., the plaintiffs in the instant suit, did not request a stay of the Sale Order in either forum).  Instead, plaintiffs asked the bankruptcy judge to certify a direct appeal to the United States Court of Appeals for the Second Circuit.  Id. at 50.  That request was denied on July 7, 2009.  In re Gen. Motors Corp., 409 B.R. 24, 29 (Bankr. S.D.N.Y. 2009).

Plaintiffs then filed a timely appeal of the Sale Order and Opinion with the district court, which was denied as moot on April 13, 2010.  In re Motors Liquidation Co., 428 B.R. at 64.  According to the district court, once the unstayed Sale Order was appealed, the only possible rationale for undoing the 363 Sale would have been that New GM was not a good faith purchaser of Old GM's assets.  Id. at 54.  Because plaintiffs did not argue in their appeal that New GM was not a good faith purchaser, their failure to obtain a stay of the Sale Order rendered their appeal moot.  Id.  For this and other reasons, plaintiffs' appeal before the district court was denied, and the Sale Order and Opinion were affirmed.  Id. at 64.  Although the district court expressed some sympathy for the Campbell Appellants, the court stated that the relief they requested would "unravel" the 363 Sale and result in a "liquidation in which they and other unsecured creditors would have received nothing."  Id.

> 2.     Extensive Litigation of the Terms of the Sale Order after It Was Entered on July 5, 2009

For context, the court provides a few examples of the subsequent history of the Sale Order and Opinion.  An unsecured bondholder appealed the Sale Order on multiple grounds, including an allegation that the federal government had taken his property interest by exerting influence over the terms of the 363 Sale.  In re Motors Liquidation Co., 430 B.R. 65, 95-96 (S.D.N.Y. 2010).  This contention was rejected by the district court.  Id. at 95-97.  In another facet of the case, the breadth of the injunctive relief offered to New GM by the Sale Order was litigated by the United Auto Workers union.  In re Motors Liquidation Co., 457 B.R. 276, 293 (Bankr. S.D.N.Y. 2011).  In yet another strand of this litigation, the injunction included in the Sale Order was construed recently not to bar the claims of certain injured claimants.  In re Motors Liquidation Co., 829 F.3d 135, 157-58 (2d Cir. 2016), cert. denied sub nom. Gen. Motors LLC v. Elliott, 137 S. Ct. 1813 (2017).  This is just the tip of the iceberg of the subsequent history of the Sale Order

and Opinion.  The court observes that the validity of the Sale Order and the interpretation of its various provisions have been vigorously and continuously litigated from July 6, 2009 onward.

V.      Jurisdictional Analysis

When confronted with the statute of limitations obstacle to this suit, the court considered whether the solicitation of additional briefs on this precise issue would have been appropriate.  But this is not a case in which the jurisdictional facts underlying the claims in a complaint have not been adequately explained.  Plaintiffs have filed two complaints and five briefs in this case setting forth every pertinent fact required for the court's jurisdictional analysis.  The General Motors bankruptcy, as noted supra, has also produced a plethora of judicial opinions, including a decision from the Federal Circuit discussing the precise type of claim presented here, a government taking by the coercion of third parties in the Old GM bankruptcy.  A & D Auto, 748 F.3d at 1153-56.  In these circumstances, another round of briefing focused solely on the accrual of plaintiffs' takings claims in this suit would have offered no additional helpful information to the court.

Moreover, the court cannot countenance further delay in determining its jurisdiction over this suit.  Defendant's motion to dismiss this suit on jurisdictional grounds was fully briefed as of January 19, 2016.  Oral argument was held by the judge previously assigned to this case on April 12, 2016, almost three months later.  Supplemental briefing ensued exploring questions of law inherent in plaintiffs' unusual takings claims.  Plaintiffs and the government are entitled to a jurisdictional ruling on an amended complaint filed more than two years ago.

Further, the court observes that plaintiffs are now proceeding before a third judicial forum in their quest to obtain relief related to the extinguishment of their successor liability claims against New GM by the bankruptcy court in its Sale Order.  To conserve the parties' and the federal judiciary's resources, the court is obliged to rule on its own jurisdiction in the most expeditious manner.  Because the factual record is very well-developed, it is time for a jurisdictional ruling; the parties may seek appellate review of the court's claim accrual analysis if, in their view, the court has erred.  Finally, the court observes that an alternative ground for dismissal has been exhaustively briefed by the parties and is ripe, if not overripe, for decision.

A.      A Takings Claim Must Identify the Government Action Which Constitutes the Taking

Plaintiffs' takings claims assert coercion by the United States to induce the extinguishment of their successor liability claims in the bankruptcy court's July 5, 2009 Sale Order.  Am. Compl. ¶ 9, ECF No. 4.  Plaintiffs also assert that the accrual of their takings claims did not occur until the 363 Sale closed on July 10, 2009.  Id. ¶ 168.

Plaintiffs' allegation as to the accrual of their takings claims, a conclusion of law, is neither correct nor entitled to deference. Papasan, 478 U.S. at 286.

The Federal Circuit has held that a takings plaintiff must "pinpoint what step in the sequence of events . . . constituted conduct that the government could not engage in without paying compensation." Branch v. United States, 69 F.3d 1571, 1575 (Fed. Cir. 1995). This "step" is not necessarily the moment when the value of property is destroyed – the diminishment in value of the plaintiff's property may occur later, at another step in the sequence of events. In Branch, for example, the taking, if any, did not occur when a newly-insolvent bank was seized and closed, but beforehand, when the Federal Deposit Insurance Corporation assessed the formerly-healthy bank with more than $1 billion in liability due to the insolvency of a sister bank owned by the same holding company. Id. at 1574-75. This court is tasked with finding in the complaint the government action from which the alleged taking was the "direct result." Id. at 1575.

A similar analysis was performed in Acceptance Insurance Cos. v. United States, 583 F.3d 849, 855-57 (Fed. Cir. 2009) (Acceptance) (citing Branch, 69 F.3d at 1575, among other authorities). The plaintiff in that case attempted to point to a series of government actions, "collectively," as a taking of the plaintiff's portfolio of insurance contracts. Id. at 854. The Federal Circuit expressly rejected the plaintiff's identification of "the alleged taking as consisting of several distinct actions viewed in concert." Id. at 855. Rather, the Federal Circuit found that the taking, if any, occurred when a government authority refused to permit a specific sale to a specific purchaser of that portfolio of insurance contracts. Id. at 855-56. Subsequent actions, such as the government's alleged control of the sale of individual insurance contracts to other purchasers, were irrelevant to the takings analysis. Id. at 854-57. The court identified the specific government action that the plaintiff alleged had directly caused the taking of its property interest, and disregarded subsequent events such as the alleged loss of the plaintiff's "entire . . . insurance business." Id. at 855.

Guided by Acceptance and Branch, this court has examined plaintiffs' amended complaint closely to identify the government action alleged to have directly caused the extinguishment of their successor liability claims against New GM. In the court's view, the government action that directly caused that extinguishment occurred no later than July 5, 2009. Much like the complaint reviewed in Acceptance, one specific government action predominates throughout plaintiffs' allegations that a taking occurred. That particular action was the coercion of Old GM and the bankruptcy court into including the extinguishment of plaintiffs' successor liability claims against New GM in the bankruptcy court's July 5, 2009 Sale Order.

B.      Allegations that Coercive Government Action Directly Extinguished
        Plaintiffs' Successor Liability Claims in the Sale Order

The complaint distinctly identifies the government action that allegedly "took" plaintiffs' property interest.  As noted <u>supra</u>, the "nature of this action" section of the complaint states that "[t]he Government's demand that [plaintiffs'] rights to assert successor liability claims against New GM be extinguished in the Sale Order violated the Takings Clause of the Fifth Amendment to the United States Constitution."  Am. Compl. ¶ 9, ECF No. 4.  The complaint goes on to state that "the Government went the extra step of conditioning the closing of the Sale on [the] inclusion of a provision within the Sale Order that expressly extinguished the rights of any Personal Injury Claimant to assert successor liability claims against New GM." <u>Id.</u> ¶ 107.  The government action is again identified near the conclusion of the "factual allegations" section of the complaint as follows:  "[T]he Government refused to yield one iota in its demand that the Sale Order contain broad language extinguishing all rights to assert successor liability claims against New GM." <u>Id.</u> ¶ 123.

The same government action is identified in plaintiffs' opposition to defendant's motion to dismiss.  In that brief, plaintiffs state that "[t]he Government conditioned its willingness to close the Sale on the GM Bankruptcy Court's including a provision in the Sale Order extinguishing [plaintiffs'] rights to assert successor liability claims against New GM."  ECF No. 13, at 10.  Later in that brief, plaintiffs allege that their "takings claim is rooted in the Government's coercive demand that the Sale Order extinguish Plaintiffs' rights to assert successor liability claims against New GM." <u>Id.</u> at 35.  Plaintiffs conclude that "[t]he Complaint sufficiently alleges how the character of the Government's actions went too far by requiring that the Sale extinguish the Personal Injury Claimants' successor liability rights." <u>Id.</u> at 43.

In a supplemental brief filed later in this litigation, plaintiffs focus their takings allegations quite narrowly on the government's coercion of third parties to include particular provisions in the Sale Order, explaining:

> Plaintiffs, however, do not allege the Sale itself was a taking of their unsecured claims against Old GM.  Instead, they allege a taking occurred because of the Government's coercive condition, targeted at Personal Injury Claimants, that it would close the [363] Sale only if the Sale Order included a provision that enjoined these claimants from pursuing successor liability claims against New GM.

ECF No. 23, at 4.  Finally, in the most recent brief filed by plaintiffs, the government action once more identified is the coercion of third parties by the government as to the terms of the Sale Order:

> [T]he Government arbitrarily demanded that personal injury claimants'
> successor liability claims be eliminated through the Sale Order . . . .
> Clearly, then, Plaintiffs' injuries are "fairly traceable" to the Government's
> conduct, thus establishing the requisite causation for constitutional
> standing.

ECF No. 32, at 17-18.  All of the allegations in the complaint and plaintiffs' briefs are
consistent.  The government action alleged to have directly caused the taking is the
coercion of third parties to include an extinguishment provision in the July 5, 2009 Sale
Order.

The takings claims in this case, filed on July 9, 2015, are founded on allegedly
coercive acts by the government that obtained a Sale Order that disadvantaged plaintiffs.
Such coercive acts could not have persisted later than July 5, 2009, the date the Sale
Order issued.  For this reason, plaintiffs' claims accrued on July 5, 2009 and are barred
by the six-year statute of limitations established by section 2501.

C.      No Direct Causation Link between Government Action and the
        Extinguishment of Rights to Pursue Successor Liability Claims against
        New GM after July 5, 2009

The court has reviewed the complaint, plaintiffs' briefs, and the opinions
discussing the extinguishment of successor liability claims against New GM issued by
both the bankruptcy court and the district court.  Nowhere has the court found the
slightest rational inference that the United States took any action targeting the property
interest alleged by plaintiffs after July 5, 2009.  To be sure, the sequence of government
actions in the bankruptcy proceedings continued through July 10, 2009, when a
government-controlled entity, New GM, participated as a party to the closing of the 363
Sale.  Am. Compl. ¶ 3, ECF No. 4.  However, any government action taken from July 6
to July 10, 2009 is not the government action that directly caused the taking alleged in
this case.  That complained of action, discussed supra, was the government's demand that
the Sale Order include terms which would extinguish successor liability claims against
New GM once the 363 Sale closed.  Plaintiffs, pursuant to Acceptance and Branch,
cannot include every step in the sequence of government actions to "collectively" frame
their takings claim.  A prior specific step, taken by the government no later than July 5,
2009, marks the point in time when plaintiffs' claims accrued.

D.      No Coercion by the Government after July 5, 2009

The court is mindful, too, that the elements of a taking founded upon the coercion
of third parties in the Old GM bankruptcy have been set forth in a binding precedential
opinion issued by the Federal Circuit.  These elements are not present in any action taken
by the United States after July 5, 2009.  For example, a clear line was drawn between the

persuasion of third parties by the federal government, which cannot create a taking, and coercive action directed to third parties, which may constitute a taking in certain circumstances.  A & D Auto, 748 F.3d at 1154 (citations omitted).  Here, no coercion could have occurred after July 5, 2009 because the conditioning of the 363 Sale upon the extinguishment of plaintiffs' successor liability claims against New GM had already occurred in the Sale Order.[9]  Because no coercion, and thus no taking, occurred after July 5, 2009, plaintiffs' takings claims accrued no later than July 5, 2009.

E.     No Judicial Taking of Plaintiffs' Successor Liability Claims

The complaint does not contain an allegation that the bankruptcy court's actions in Old GM's bankruptcy constituted a judicial taking.  To the extent that plaintiffs' complaint could be read to include such an allegation, the court finds that the injunctive relief provided New GM by the Sale Order could not have effected a judicial taking under the binding precedent of Allustiarte v. United States, 256 F.3d 1349, 1351-52 (Fed. Cir. 2001).  That holding forecloses the prosecution of a takings claim in this court which would require a review of the effect of a bankruptcy court's rulings on a plaintiff's property rights.  Id.; cf. A & D Auto, 748 F.3d at 1153 (commenting that bankruptcy law, in existence before contractual rights were obtained by the plaintiffs in that suit, defeated any inference that the automobile dealers possessed a compensable property interest that could be taken by the bankruptcy court).  Thus, even if plaintiffs had asserted a judicial takings claim, such a claim would be beyond this court's jurisdiction.  Cf. Tr. at 79 (plaintiffs' counsel) (stating that on these facts, it was "possible" that a judicial taking had occurred).

As part of its accrual analysis, however, the court notes that, as of July 5, 2009, the Sale Order was the most direct cause of the extinguishment of plaintiffs' successor liability claims.  The terms of the Sale Order were enforced by the bankruptcy court thenceforward, and it was the bankruptcy court that ruled on various appeals seeking relief from the Sale Order.  To the extent that there could have been a taking of plaintiffs' successor liability claims against New GM after July 5, 2009, the government actor capable of such action was the bankruptcy court, not the federal officials who participated in the closing of the 363 Sale.  For all of the above reasons, plaintiffs' takings claims accrued on or before July 5, 2009, and are barred by this court's six-year statute of limitations.

---

[9]     It is difficult to imagine that there was even any persuasive activity by the United States taking place once the Sale Order issued.

VI.     Property Interest Analysis

Although defendant's property interest arguments focus on plaintiffs' standing to bring this suit, ECF No. 8, at 22-25, and thus question this court's jurisdiction over plaintiffs' takings claims, the court believes the property interest issue is better addressed as the complaint's failure to state a claim upon which relief may be granted.  Indeed, in Adams v. United States, 391 F.3d 1212 (Fed. Cir. 2004), the case upon which defendant extensively relies for its property interest arguments, the Federal Circuit affirmed the dismissal of a takings complaint for failure to state a claim upon which relief might be granted.  Id. at 1214.  Because plaintiffs have included a nonfrivolous allegation that they possessed a property interest that was taken by government action, disputes over the sufficiency of that property interest go more to the plausibility of their claims, under RCFC 12(b)(6), than to jurisdictional concerns.  See, e.g., Jan's Helicopter Serv., Inc. v. F.A.A., 525 F.3d 1299, 1309 (Fed. Cir. 2008) (holding that when "complaints contain nonfrivolous allegations that [the plaintiffs] fall within a protected class under the Fifth Amendment, the Court of Federal Claims has jurisdiction to consider those complaints under the Tucker Act").

A.     The Property Interest Alleged by Plaintiffs in the Complaint

As the court has discussed earlier in this opinion, the complaint identifies plaintiffs' property interest that was allegedly taken by the government.  Although there are various descriptive statements of the property interest of concern in the complaint, the most succinct and accurate characterization of plaintiffs' property interest can be found in this phrase:  the "rights to assert successor liability claims against New GM."  Am. Compl. ¶ 9, ECF No. 4.  The parties hotly dispute whether plaintiffs' property interest is cognizable as property for purposes of a takings claim.  The court has considered all of the parties' arguments, and concludes that the property interest identified in the complaint is not a cognizable one that supports a takings claim in this court.[10]  See, e.g., Adams, 391 F.3d at 1218 (requiring that this court first determine "whether the claimant possessed a cognizable property interest in the subject of the alleged taking for purposes of the Fifth Amendment") (citation omitted).

It is important to distinguish the personal injury tort claims against Old GM, which survived the Sale Order, and the successor liability claims against New GM, which did not.  Most of plaintiffs' briefing acknowledges this distinction.  See, e.g., ECF No. 13, at 9 (question presented by this case) ("Are the Personal Injury Claimants' rights to assert successor liability causes of action against New GM compensable property interests within the meaning of the Fifth Amendment?"); id. at 13 ("First, the Government fails to

_____

[10]     In the interests of efficiency, the court addresses only the most pertinent arguments in this regard presented by the parties during the course of this litigation.

distinguish between Plaintiffs' underlying tort claims against Old GM and the wholly separate right to assert successor liability claims against New GM.  It is the latter that were extinguished in the Sale Order, not the former."); ECF No. 23, at 4 ("[I]t is the impairment of Plaintiffs' successor liability claims against a non-debtor, New GM -- not the impairment of their unsecured claims against the debtor, Old GM -- that forms the gravamen of the Complaint."); id. ("Plaintiffs, however, do not allege the Sale itself was a taking of their unsecured claims against Old GM."); see also Tr. at 101 (plaintiffs' counsel) (describing plaintiffs' property interest as the "right to bring a successor liability claim").

As briefing continued, however, plaintiffs' description of their property interest became more convoluted, as they presented the following:

> Here, the underlying "legally protected" property interests that establish Plaintiffs' constitutional standing to assert a takings claim against the Government are the personal injury products liability claims held by each Plaintiff and each member of the putative class.  It is these claims for debilitating, even deadly, injuries to their bodies that were protected by the successor liability claims they had the right to assert against New GM and it is these claims that the Government caused to be extinguished in the Sale in contravention of the Takings Clause.

ECF No. 27, at 4.  This is a very elaborate argument, indeed.  Plaintiffs appear to allege, at least in this brief, that it was the first property right (the tort claims against Old GM), protected by a second property right (the successor liability claims against New GM), that was taken by the Sale Order.

Plaintiffs' characterization of their property interest then evolves even further in their final brief.  In that brief, plaintiffs merge all of their property interests into a vague and general "right to compensation":

> Plaintiffs' legally-protected interest is their right to compensation -- from any source -- for personal injuries caused by product defects in cars manufactured by Old GM.

ECF No. 32, at 8.  Unfortunately for plaintiffs, neither the facts alleged in the complaint, nor the takings jurisprudence guiding this court, support their increasingly tangled efforts to identify the property interest that was taken by the government.

The focus of the complaint is on the provisions in the Sale Order that extinguished plaintiffs' rights to bring successor liability claims against New GM.  Am. Compl. ¶¶ 9, 107, 123, ECF No. 4.  The alleged taking in the complaint is of a clearly defined property interest; and that right to bring successor liability claims against New GM is the only

property interest in these circumstances which fits within the coercion framework established by A & D Auto.  See 748 F.3d at 1152-53 (holding that the conditioning of the government's bail-out of the auto companies upon the termination of the plaintiffs' franchise agreements was possibly a taking of the auto dealers' property interests in those terminated agreements).  Here, the extinguished "rights to bring successor liability claims against New GM," Am. Compl. ¶ 9, ECF No. 4, are analogous, in many respects, to the terminated franchise agreements in A & D Auto, and this is the particular property interest underlying plaintiffs' takings claims.

B.     State Law Property Interest in Rights to Bring Successor Liability Claims

Plaintiffs rely on Michigan state law as a tool for understanding the dimensions of plaintiffs' property interest in their successor liability claims.  Am. Compl. ¶ 157, ECF No. 4; ECF No. 21, at 1-7; Tr. at 49, 80, 128.  Defendant does not agree that Michigan state law is controlling here.  ECF No. 22, at 1-3.  The court need not decide this issue. In the circumstances of the General Motors bankruptcy, as explained below, any state law right to bring successor liability claims was limited by federal bankruptcy law and the highly contingent nature of plaintiffs' property interest.  See Bair v. United States, 515 F.3d 1323, 1327 (Fed. Cir. 2008) ("Despite the statements in a number of Supreme Court cases referring to the creation of property interests by state law, the Court has recognized that state-created property interests may be limited by federal laws, even in the area of real property."); Adams, 391 F.3d at 1219 ("'[E]xisting rules or understandings that stem from an independent source,' such as state, federal, or common law, create and define the dimensions of property interests for purposes of establishing a cognizable right and hence a potential taking." (quoting Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1030 (1992))).  For the sole purpose of this property interest analysis, however, the court accepts plaintiffs' inference that Michigan state law defines their rights to bring successor liability claims against New GM.[11]

---

[11]     Plaintiffs state:

[T]here are no individualized issues of law.  Each Class member had successor liability rights against New GM that were extinguished in the 363 Sale.  Regardless of which of the 50 states that Class member lived or was injured, each Class member also had the right to assert successor liability claims against New GM in Michigan, which was New GM's principal place of business and which recognizes rights to assert successor liability claims under a multitude of theories, none of which are unique to any particular member of the Class . . . .

Am. Compl. ¶ 157, ECF No. 4.  The complaint does not specify where plaintiffs' personal injury tort claims against Old GM were filed.

C.      Bankruptcy Law Governing Section 363 Sales Predates Plaintiffs' Personal Injury Claims and Their Rights to Bring Successor Liability Claims against New GM

As a threshold matter, the named plaintiffs in this suit base their claims on accidents which occurred, respectively, in 1994, 2004 and 2006.  Am. Compl. ¶¶ 20-26, ECF No. 4.  Section 363(b) of the Bankruptcy Code, which authorized the 363 Sale in this case, predates those events, and any claims which might be founded on those accidents, by a number of years.  See, e.g., In re Chrysler LLC, 405 B.R. 84, 94 (Bankr. S.D.N.Y. 2009) (subsequent history omitted) (noting that asset sales have been authorized under section 363(b) since 1978).  Although the enactment date of section 363(b) is not dispositive for the property interest analysis required here, see A & D Auto, 748 F.3d at 1152-53 (stating that it was the date of the challenged government action, not the date the bankruptcy law was enacted, that determined what law "inhered" in the title of the property owned by the takings plaintiffs in that suit), existing bankruptcy law at the time Old GM filed for bankruptcy, under the particular circumstances of this case, plays a greater role than it did in A & D Auto.

D.      Plaintiffs' Asserted Property Interest Is Too Contingent to be Cognizable under Takings Jurisprudence Binding upon This Court

One of the key differences between A & D Auto and this case is that plaintiffs here assert a highly contingent property interest, instead of a contract-based property interest that was firmly enshrined in takings jurisprudence, as was the case in A & D Auto.  748 F.3d at 1152 (citing cases).  Plaintiffs' "rights to bring successor liability claims against New GM," Am. Compl. ¶ 9, ECF No. 4, are entirely contingent upon two discretionary acts of the federal government:  (1) a government financial intervention so that a New GM could be created; and, (2) a government intervention so that Old GM could file for bankruptcy requesting a 363 sale.  Until these two discretionary acts occurred, the property interest asserted by plaintiffs in their complaint did not exist, because there was no New GM to sue.

Thus, applying A & D Auto, the challenged government action in this suit was contemporaneous with plaintiffs' emergent right, created through the government bail-out of General Motors and the bankruptcy proceedings, to bring successor liability claims against New GM.  In these circumstances, the powers accorded the bankruptcy court by section 363 inhered in and limited plaintiffs' property interest, because that highly contingent interest, from its inception, was targeted for -- and was subject to -- extinguishment by the conditions that the government imposed on the 363 Sale.  A highly contingent property interest of this kind cannot support a takings claim.

E.     Analogous Cases of Highly Contingent Property Interests

Plaintiffs have had the opportunity to file five briefs, and present oral argument, where they could have identified even one case where a successor liability claim was found to be a cognizable property interest in support of a takings claim. But, plaintiffs have brought no such case to the attention of the court, even in the broader context of mergers and corporate sales. As to the more specific context of bankruptcy proceedings, plaintiffs have again failed to muster a single case citation that shows that an unsecured successor liability claim was held to be cognizable property for the purpose of a takings analysis. Nor has the court found any judicial decision which concluded that the right to bring unsecured successor liability claims against the purchaser in a 363 sale -- such as the one at issue in this case -- is a property interest sufficient to support a takings claim.

The government observes that a district court judge reviewing the 363 Sale rejected the proposition that unsecured claims in that proceeding constituted a property interest sufficient to support a takings claim. See In re Motors Liquidation Co., 430 B.R. at 96 (citation omitted). A similar expression of this view of takings law can be found in another bankruptcy case. See In re Chrysler LLC, 405 B.R. at 111-12 (holding that "an unsecured claim [does not satisfy the] necessary prerequisite to a Fifth Amendment Takings Clause claim in the bankruptcy context") (citation omitted). These categorical holdings do not necessarily comport with A & D Auto, which found that contract-based rights, which appear to have been treated as unsecured claims in the Old GM bankruptcy, were indeed property interests protected by the Fifth Amendment. 748 F.3d at 1149, 1153. The court notes, too, that a bankruptcy court in Michigan has found that one type of unsecured claim in bankruptcy proceedings encompassed a property interest sufficient to support a takings claim. In re City of Detroit, 524 B.R. 147, 270 (Bankr. E.D. Mich. 2014). From this review of takings jurisprudence, the fact that a property interest is protected only by an unsecured claim in bankruptcy proceedings is not dispositive for the takings analysis, at least in this circuit.

Unfortunately for plaintiffs, however, binding precedent in this circuit removes highly contingent property interests, such as the one that underlies the takings claim in this suit, from the ambit of the Takings Clause. The court cites just a few examples in this regard. The guiding principle in these cases is that federal law, including bankruptcy law, may inhere in and limit property interests that otherwise exist under state law. Bair, 515 F.3d at 1327-31. Indeed, the fact that the federal law predated the creation of the state law property interest is generally dispositive, even when the government action enforcing or triggering the federal law postdates the creation of the state law property interest.[12] See id. at 1329 ("The federal statute thus limited the petitioners' later-arising,

---

[12]     As noted above, in A & D Auto, this general principle did not apply. 748 F.3d at 1152-53 (citing Bair, 515 F.3d at 1331). But this case is distinguishable from A & D Auto because the property interest here did not exist until the government intervened in

state-created property interests, even though the state liens arose before the [federal secured] progress payments were made and the enforcement of the federal statute reduced the value of the state liens.") (footnote omitted).  Following Bair, here plaintiffs' "rights to bring successor liability claims against New GM," Am. Compl. ¶ 9, ECF No. 4, were "preempted" by section 363 and were not "compensable" under takings jurisprudence in this circuit.  Id. at 1331.

Adams, the case extensively relied upon by defendant, is also instructive.  The Federal Circuit acknowledged that a cause of action may sometimes constitute a property interest for purposes of the Takings Clause.  391 F.3d at 1225-26.  The cause of action must, however, "protect[] a legally-recognized property interest."  Id. at 1226 (citation omitted).  When the cause of action protects an interest in land, undoubtedly a property interest that supports a takings claim, the cause of action is itself a property interest for takings purposes.  Id. (noting one such cause of action, which "was to recover compensation for an interest in land, a property interest cognizable under established takings jurisprudence because land is, beyond question, property under state and common law" (citing Alliance of Descendants of Tex. Land Grants v. United States, 37 F.3d 1478, 1481 (Fed. Cir. 1984))).  Where, however, the cause of action is not protecting a "recognized" property right, it is not itself a compensable property interest.  Id.

When the plaintiffs in Adams failed to cite "any precedent finding such a [cognizable] property interest in a claim of Government liability before an administrative agency," which was the type of cause of action at issue in that case, they failed to establish that their cause of action was a property interest sufficient to support a takings claim.  Id.  Here, too, plaintiffs have failed to cite any precedent for finding that successor liability claims constitute a property interest sufficient to support a takings claim.[13]  See supra.  Just as in Adams, 391 F.3d at 1214, 1226, plaintiffs' takings claims must be dismissed for failure to state a claim upon which relief may be granted.

---

Old GM's financial troubles, directed the restructuring of Old GM's debts, created New GM, and conditioned the 363 Sale on the extinguishment of plaintiffs' right to bring successor liability claims against New GM, which coincides with the time that plaintiffs' property interest arose, allegedly, under state law.

[13]     Plaintiffs' reliance on Abrahim-Youri v. United States, 139 F.3d 1462 (Fed. Cir. 1997) is misplaced, for two reasons.  First, the issue on appeal in Abrahim-Youri was not whether the takings plaintiffs in that case possessed a compensable property interest, but whether they had suffered an avoidable economic loss because of the alleged taking, and whether they had reasonable expectations as to the investment value of their property.  Id. at 1468.  Second, Abrahim-Youri contains no mention of successor liability claims.

Finally, the <u>Acceptance</u> decision clearly establishes that a highly contingent property interest is not afforded the protections of the Takings Clause. The Federal Circuit determined that the alleged taking in that case was a specific action of the United States Department of Agriculture's Risk Management Agency (RMA). The alleged taking was effected by "the RMA's rejection of the proposed sale to Rain & Hail [LLC] of [plaintiff's] portfolio of insurance policies." <u>Acceptance</u>, 583 F.3d at 855-56. The court then identified the property interest that was taken by the RMA's rejection of that sale. <u>Id.</u> at 856-57. Simply put, the property interest was "Acceptance's ability to freely sell [its] insurance portfolio to Rain & Hail." <u>Id.</u> at 857.

Relying on a number of cases where a right to sell property or a right to enjoy property in a particular way was limited by federal law, the <u>Acceptance</u> court held that the plaintiff's right to sell its portfolio to a particular buyer was not unfettered, even though a property right embodied in a contract might otherwise, under state law, be freely sold or assigned. <u>Id.</u> at 857-59. The court stated, for example, that "because the RMA had the authority to deny the sale of the policies at issue, Acceptance, through [its subsidiary], did not possess the unfettered right to sell or otherwise transfer the policies, thus precluding the existence of a cognizable property interest." <u>Id.</u> at 858 (citations omitted). The Federal Circuit concluded that the property interest alleged to have been taken was contingent on a discretionary decision of the RMA, and therefore was not compensable under the Takings Clause:

> In other words, when the RMA decided to disapprove of the sale to Rain & Hail, there was no right to freely alienate the policies extant in Acceptance[] with which that decision interfered. Essentially, Acceptance asks us to recognize a cognizable property right in a decision by the RMA not to exercise its authority to reject the sale of insurance policies subject to the crop insurance regulatory scheme. We decline to do that.

<u>Id.</u> <u>Acceptance</u> thus stands for the proposition that when a property interest is contingent on a favorable decision of a federal agency, it is not a cognizable property interest under the Takings Clause.

Here, plaintiffs assert a property interest in their "rights to bring successor liability claims against New GM." Am. Compl. ¶ 9, ECF No. 4. At the time that the property interest arose, the government possessed the discretion to extinguish, or not extinguish, that property interest as a condition of the 363 Sale. Once the government exercised its discretion, plaintiffs' highly contingent property interest was extinguished.[14] Following

---

[14]   As plaintiffs noted at oral argument, the bankruptcy court had no choice but to accept the government's conditions for the 363 Sale, because the alternative was economically unacceptable. Tr. at 96, 98-99, 130-31. The bankruptcy judge appears to have shared this view of the facts. <u>See, e.g.</u>, <u>In re Gen. Motors Corp.</u>, 409 B.R. at 32-34

Acceptance, federal bankruptcy law, particularly the powers accorded the bankruptcy court by section 363, and the federal government's discretionary right to condition its investment in New GM on the extinguishment of plaintiffs' successor liability claims against New GM, inhered in plaintiffs' property interest such that plaintiffs' property interest was not a cognizable property interest under the Takings Clause.

VII.   Conclusion

For the reasons stated in this opinion, plaintiffs' claims must be dismissed for lack of subject matter jurisdiction because they were untimely filed under 28 U.S.C. § 2501. Even if this suit had been timely filed, the complaint fails to state a claim upon which relief may be granted.  Accordingly, defendant's motion to dismiss, ECF No. 8, is **GRANTED**.  The clerk's office is directed to **ENTER** final judgment for defendant **DISMISSING** plaintiffs' amended complaint, without prejudice.

IT IS SO ORDERED.

s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Judge

---

(predicting dire economic consequences if the 363 Sale did not close within the timeframe specified by the government); cf. In re Motors Liquidation Co., 457 B.R. at 285 (noting that "[a]s is customary in 363 transactions, the [Sale] Order, which was 50 pages long, was drafted by the movants (and, perhaps other parties in interest) for [the bankruptcy judge's] review, approval, and ultimate entry").