# In the United States Court of Federal Claims

No. 15-717C
(E-Filed:  March 23, 2018)

| | |
|---|---|
| CALLAN CAMPBELL, et al., | ) |
| | ) |
| Plaintiffs, | ) Motion for Reconsideration, RCFC 59; |
| | ) Motion for Leave to File an Amended |
| v. | ) Complaint, RCFC 15(a); |
| | ) Reconsideration Denied; Futile |
| THE UNITED STATES, | ) Request to Amend Complaint Denied. |
| | ) |
| Defendant. | ) |
| | ) |

Steve Jakubowski, Chicago, IL, for plaintiffs.  Robert M. Winter and Catherine A. Cooke, Chicago, IL, of counsel.

John J. Todor, Senior Trial Counsel, with whom were Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION

CAMPBELL-SMITH, Judge.

The court has before it plaintiffs' combined motion for reconsideration, motion to amend the judgment, and motion for leave to file a second amended complaint, ECF No. 35, which is brought pursuant to Rules 59 and 15(a) of the Rules of the United States Court of Federal Claims (RCFC).  The motion has been fully briefed.  See Def.'s Resp., ECF No. 37; Pls.' Corrected Reply, ECF No. 39.  For the reasons set forth below, plaintiffs' motion is **DENIED**.

I.      Procedural Background

Plaintiffs now rely on a proposed Second Amended Class Action Complaint, ECF No. 35-1, to clarify their claims and to add additional factual allegations which, in their view, justify reconsideration of the dismissal of their claims by this court, see ECF No. 35 at 6 (stating that the proposed Second Amended Complaint "clarifie[s]" the claim

accrual issue in this case), 7 (noting the "additional jurisdictional facts contained in the Second Amended Complaint"), 10 (referencing the facts that "the Second Amended Complaint now establishes"), 13 (relying on the "new jurisdictional facts ple[]d in the Second Amended Complaint"), 14 (stating that the Second Amended Complaint will remedy "a lack of adequate factual exposition"); see also ECF No. 39 at 5 (acknowledging plaintiffs' prior "lack of precision in alleging [their] takings claims"). The court observes that not only does the proposed Second Amended Complaint supply additional allegations of fact, it also reshapes the description of plaintiffs' takings claims and the facts already alleged. For the court's consideration of plaintiffs' motion for reconsideration, the court relies, in part, on the allegations contained in plaintiffs' proposed Second Amended Complaint, but also relies on prior representations to this court found in the First Amended Class Action Complaint, ECF No. 4, and the briefs that plaintiffs have filed during the course of this litigation.

Familiarity with the court's opinion that is the subject of plaintiffs' motion, Campbell v. United States, 134 Fed. Cl. 764 (2017) (Campbell), is presumed. The overall issue presented in the three complaints proffered by the plaintiffs in this suit is whether the government's specific conditions placed on its financial bail-out of General Motors Corporation constituted a taking of these plaintiffs' personal injury claims. Plaintiffs' personal injury suits filed against Old GM were greatly affected by the General Motors bankruptcy in 2009. Id. at 767-68. Further, in the GM bankruptcy proceedings plaintiffs' opportunity to bring successor liability suits against New GM were extinguished. Id. at 772-73, 775.

This case was dismissed for lack of subject matter jurisdiction because the original complaint was not filed within six years of claim accrual. Id. at 773. The court found that the "coercive" government action that was alleged to have caused the taking of plaintiffs' successor liability claims could not have extended past the date when the bankruptcy court issued its Sale Order on July 5, 2009. Id. Because plaintiffs' suit was filed on July 9, 2015, more than six years later, it was untimely filed under 28 U.S.C. § 2501 (2012).

In the alternative, the court held that plaintiffs' claims would necessarily have been dismissed for failure to state a claim upon which relief may be granted. Campbell, 134 Fed. Cl. at 779. The only property right asserted by plaintiffs to have been taken was a highly contingent right to bring successor liability claims that "was not a cognizable property interest under the Takings Clause." Id. Thus, even if plaintiffs' claims had been timely filed, the complaint would have been dismissed, in any event, for failure to state a plausible takings claim. Id. at 774, 779.

II.     Standard of Review for Motions Brought under RCFC 59

Pursuant to the rules of this court, a plaintiff may be granted reconsideration of the court's disposition of a case "for any reason for which a new trial has heretofore been

granted in an action at law in federal court [or] for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." RCFC 59(a)(1)(A)-(B). "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990) (citations omitted). The motion for reconsideration "must be based on a manifest error of law or mistake of fact and must show either: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice." First Fed. Lincoln Bank v. United States, 60 Fed. Cl. 501, 502 (2004) (citations omitted).

III.    Standard of Review for Motions Brought under RCFC 15(a)(2)

Plaintiffs' motion is also brought under RCFC 15(a)(2), which states that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Id. Leave to amend a pleading should not be granted, however, when the proposed amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). Amendment of a complaint to present claims outside of this court's jurisdiction would be futile. E.g., Marchena v. United States, 128 Fed. Cl. 326, 332 (2016), aff'd, 702 F. App'x 988 (Fed. Cir. 2017) (table); Ishler v. United States, 115 Fed. Cl. 530, 541 (2014); Van Vorst v. United States, 85 Fed. Cl. 227, 233 (2008); Emerald Coast Finest Produce Co. v. United States, 76 Fed. Cl. 445, 452 (2007); Saladino v. United States, 62 Fed. Cl. 782, 795 (2004).

In addition, when the proposed amended complaint fails to state a claim upon which relief may be granted, the court should deny the motion to amend as futile. E.g., Leider v. United States, 301 F.3d 1290, 1299 n.10 (Fed. Cir. 2002); Mitsui Foods, Inc. v. United States, 867 F.2d 1401, 1404 & n.4 (Fed. Cir. 1989) (citing Foman, 371 U.S. at 182); Marchena, 128 Fed. Cl. at 334. The appropriate test for futility, when there is a question as to whether the proposed amended complaint states a claim upon which relief may be granted, is the plausibility test delineated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) (Iqbal) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (Twombly). E.g., A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1159 (Fed. Cir. 2014); Marchena, 128 Fed. Cl. at 333. Under this test, the allegations of the proposed amended complaint must state a plausible claim for relief. See, e.g., Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting Twombly, 550 U.S. at 570).

IV.    Discussion

A.    Claim Accrual

Plaintiffs' briefs do not argue that the Campbell opinion contained factual errors regarding the chronology of events relevant to claim accrual. Nor do plaintiffs dispute

this court's finding that the type of "taking" at issue in their claims is the alleged coercion of third parties by the federal government during the GM bankruptcy. Instead, plaintiffs contend that the court's legal analysis of the claim accrual question was flawed due to an incomplete presentation of facts in the First Amended Complaint, and because the court's analytical framework was incorrect.

The court has carefully considered the new allegations of fact in the proposed Second Amended Complaint, as well as plaintiffs' arguments based on those factual allegations and takings jurisprudence, and finds no reason to conclude that plaintiffs' takings claims accrued on July 9 or July 10, 2009, rather than on July 5, 2009. Once the bankruptcy court entered the Sale Order on July 5, 2009, any alleged government coercion of third parties, as "coercion" is defined in this context by A & D Auto, 748 F.3d at 1153-56, ceased. The court turns to the principal arguments presented by plaintiffs on the topic of claim accrual.[1]

1.   July 10, 2009 363 Sale Closing Date Proposed as the Accrual Date

As previously asserted in their First Amended Complaint, ECF No. 4 at 39, plaintiffs aver that their takings claims accrued on July 10, 2009, the closing date of the 363 Sale which conveyed many of Old GM's assets to New GM, ECF No. 35 at 9-12.[2] In support of this accrual date, plaintiffs argue, first, that precedential takings cases require that the government exert "effective control" over property before a taking can occur and the related takings claim can accrue. Plaintiffs rely on Cuban Truck & Equipment Co. v. United States, 333 F.2d 873, 878 (Ct. Cl. 1964), and Turney v. United States, 126 Ct. Cl. 202, 214 (1953), for this proposition. ECF No. 35 at 10-11; ECF No. 39 at 12-13. Both of these cases involved physical property (trucks or radar equipment) over which the United States military exercised some amount of physical control. The accrual of the takings claims in Cuban Truck and Turney is not at all analogous to the accrual of plaintiffs' takings claims based on the government's alleged, non-physical

---

[1]   The court has considered all of plaintiffs' arguments but limits its discussion here to the most substantial arguments raised in plaintiffs' briefs. Although plaintiffs rely, in part, on decisions issued by this court to establish precedent, the court's focus here is primarily on authorities which provide binding precedent. See, e.g., W. Coast Gen. Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court.") (citations omitted).

[2]   As explained in Campbell, in a "363 sale" under 11 U.S.C. § 363(b), (f) (2012), "the acquiring entity may, if certain conditions are met, obtain particular assets from the bankruptcy petitioner and, at the same time, avoid some of the liabilities of the petitioner." 134 Fed. Cl. at 768.

coercion of third parties; the holdings in those two cases in no way militate for an accrual date of July 10, 2009, for plaintiffs' takings claims in this case.

Plaintiffs next turn, ECF No. 35 at 10-12; ECF No. 39 at 12, to the <u>Dickinson</u> line of cases, where the accrual of a takings claim may be "postponed" if the "damages from [the] taking only gradually emerge." <u>Nw. LA Fish & Game Pres. Comm'n v. United States</u>, 446 F.3d 1285, 1290-91 (Fed. Cir. 2006) (citing <u>United States v. Dickinson</u>, 331 U.S. 745, 749 (1947)). According to the United States Court of Appeals for the Federal Circuit, this claim accrual rule applies in cases where the taking is effected by "continuous physical processes." <u>Id.</u> at 1291 (citing <u>Applegate v. United States</u>, 25 F.3d 1579, 1582 (Fed. Cir. 1994)). This accrual rule is often referred to as the stabilization doctrine. <u>Id.</u> at 1290-91. Because plaintiffs here allege a taking that does not involve a continuous physical process, the stabilization doctrine, and the cases cited by plaintiff that follow <u>Dickinson</u>, have no applicability to the accrual of their takings claims.

2.      July 9, 2009 Stay Denial Date Proposed as the Accrual Date

Plaintiffs also contend that their takings claims accrued no earlier than July 9, 2009, when the emergency motion for a stay pending appeal -- filed by the "Asbestos" claimants in the GM bankruptcy -- was denied by the district court. ECF No. 35 at 12-14; ECF No. 35-1 at 41; <u>see also</u> <u>In re Motors Liquidation Co.</u>, 428 B.R. 43, 51 (S.D.N.Y. 2010) (giving the history of the <u>Campbell</u> and Asbestos claimants' efforts to challenge the extinguishment of their successor liability claims against New GM before the 363 Sale closed on July 10, 2009). In broad strokes, plaintiffs argue that because the July 5, 2009 Sale Order was not effective until July 9, 2009, and because the government defended against attempts to stay the Sale Order and the 363 Sale through July 9, 2009, government coercion of third parties did not cease on July 5, 2009 -- contrary to the court's holding in <u>Campbell</u>. ECF No. 35 at 12-14. Plaintiffs' arguments are not persuasive.

The court begins with the "effective date" argument. The court, when it issued <u>Campbell</u>, was not unaware of the fact that the Sale Order that issued on July 5, 2009, included a provision citing July 9, 2009, as the effective date. Indeed, the effective date of the Sale Order was highlighted by the bankruptcy court as a modification of the draft Sale Order proposed by Old GM. <u>See</u> ECF No. 4-1 at 48; ECF No. 4-2 at 95 n.143. As the bankruptcy court observed, the four-day period between July 5, 2009, and July 9, 2009, was specifically designed to provide a (limited) opportunity for appellate review of the Sale Order. ECF No. 4-2 at 95 n.143. As this court noted in its prior opinion, a variety of challenges to the Sale Order were filed during this time-frame. <u>Campbell</u>, 134 Fed. Cl. at 770. None of these challenges prevented the Sale Order from becoming final on July 9, 2009, or prevented the 363 Sale from closing on July 10, 2009.

Even when the factual allegations presented in the proposed Second Amended Complaint are taken into account, the four-day window of time provided for appellate

review in the Sale Order is not an indication that government coercion of Old GM and the bankruptcy court extended past July 5, 2009.[3]   The court continues to view the entry of the Sale Order on July 5, 2009, as the actualization of the government's efforts to extinguish plaintiffs' successor liability claims as a condition of the 363 Sale, and as the accrual date for plaintiffs' takings claims.   Plaintiffs' revisions to the First Amended Complaint cannot alter the true nature of plaintiffs' takings claims.   See, e.g., James v. Caldera, 159 F.3d 573, 579 (Fed. Cir. 1998) (stating that the jurisdictional inquiry "does not end with the words of the complaint, however instructive they may be, for [the court] still must 'look to the true nature of the action in determining the existence or not of jurisdiction'" (quoting Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed. Cir. 1994))).

Pursuant to A & D Auto, the government may be liable for a taking when its coercive actions "condition" government financing on the extinguishment of legal rights, and when the company's survival depends on its acceptance of that financing with those conditions.   748 F.3d at 1154.   The coercion alleged in all of plaintiffs' complaints, no matter how phrased, is bounded by this precedent.   The only government actions which conform to the A & D Auto coercion scenario are those in which Old GM and the bankruptcy court were coerced into structuring the 363 Sale so that plaintiffs' successor liability claims were extinguished.   Those allegedly "coercive" actions terminated, at the latest, on July 5, 2009.

Plaintiffs also rely on the litigation of claims in the GM bankruptcy between July 5, 2009, and July 9, 2009, as evidence of coercive conduct extending beyond July 5, 2009.   In their proposed Second Amended Complaint plaintiffs allege a multitude of facts that show, perhaps, that the extinguishment of their successor liability claims remained a live issue in Congress and, in particular, before the district court through July 9, 2009.[4] ECF No. 35-1 at 37-41.   To characterize the government actions that took place in these settings as continued coercion of the type described in A & D Auto is erroneous.   What plaintiffs describe in these paragraphs of their proposed Second Amended Complaint is

---

[3]     Plaintiffs have added the district court as another named target of the government coercion that effected the takings alleged in the proposed Second Amended Complaint. ECF No. 35-1 at 8-9, 37, 39-41.   The court notes this allegation, but does not view the government's actions vis-à-vis the district court to constitute coercion.   See infra.

[4]     The court notes that plaintiffs' only challenge to the Sale Order filed during this four-day period -- asserted as a request for a direct appeal to the United States Court of Appeals for the Second Circuit -- was denied by the bankruptcy court on July 7, 2009.   In re Motors Liquidation Co., 428 B.R. at 50-51 & n.9.   The date July 7, 2009, like July 5, 2009, is outside this court's six-year limitations period.   Plaintiffs rely on a challenge to the Sale Order filed by the Asbestos claimants on July 8, 2009, to further delay the accrual of their own claims beyond July 7, 2009.   ECF No. 35-1 at 39.

merely a four-day episode in the ongoing participation of the United States in the long-lived GM bankruptcy proceedings.

As the court noted in <u>Campbell</u>, that litigation has not yet concluded.  134 Fed. Cl. at 770 (citation omitted); <u>see also</u> <u>In re Motors Liquidation Co.</u>, No. 09-50026 (MG), 2018 WL 491783 (Bankr. S.D.N.Y. Jan. 18, 2018).  Plaintiffs cannot depend on the government's participation in the GM bankruptcy as a perpetual claim accrual-delaying mechanism.  Any coercive activity by the United States that would fit within the analytical framework provided by <u>A & D Auto</u> terminated, at the latest, on July 5, 2009.

> 3.    Plaintiffs' Challenge to the Court's Analytical Framework for Claim Accrual

Plaintiffs also contend that the court's analytical framework for its claim accrual ruling was flawed.  In particular, plaintiffs suggest that neither <u>Branch v. United States</u>, 69 F.3d 1571 (Fed. Cir. 1995), nor <u>Acceptance Insurance Cos. v. United States</u>, 583 F.3d 849 (Fed. Cir. 2009) (<u>Acceptance</u>), was correctly applied in <u>Campbell</u>.  ECF No. 35 at 12; ECF No. 39 at 11-12.  Plaintiffs' argument regarding these two cases is cursory, is unsupported by citation to any cases which discuss <u>Branch</u> or <u>Acceptance</u>, and fails to persuade.  The court finds nothing in plaintiffs' discussion of <u>Branch</u> or <u>Acceptance</u> that invalidates the analytical framework for claim accrual that was set forth in <u>Campbell</u>.

In their reply brief, plaintiffs attempt to buttress their attack on the court's reading of <u>Branch</u> and <u>Acceptance</u> by citing to a wide range of takings jurisprudence.  Curiously, plaintiffs ignore three precedential cases cited by the government in its response brief.  <u>See</u> ECF No. 37 at 11-12 (citing <u>Goodrich v. United States</u>, 434 F.3d 1329 (Fed. Cir. 2006); <u>Fallini v. United States</u>, 56 F.3d 1378 (Fed. Cir. 1995); <u>All. of Descendants of Tex. Land Grants v. United States</u>, 37 F.3d 1478 (Fed. Cir. 1994)).  These cases were specifically offered in support of the court's claim accrual analysis, and of the court's ruling that plaintiffs' takings claims accrued on July 5, 2009.  <u>Id.</u>

Rather than address the binding precedent of these cases and defendant's reliance on this precedent, plaintiffs largely focus in their reply brief on one of this court's decisions cited by defendant, and then draw the court's attention to a number of precedential takings cases.  Whether all of plaintiffs' arguments are properly within the scope of a reply brief to which the government has not had a chance to respond is questionable.  <u>See, e.g.</u>, <u>Arakaki v. United States</u>, 62 Fed. Cl. 244, 246 n.9 (2004) ("The court will not consider arguments that were presented for the first time in a reply brief or after briefing was complete." (citing <u>Novosteel SA v. United States</u>, 284 F.3d 1261, 1274 (Fed. Cir. 2002); <u>Cubic Def. Sys., Inc. v. United States</u>, 45 Fed. Cl. 450, 467 (1999))).

Nonetheless, even if all of plaintiffs' claim accrual arguments in their reply brief are properly before the court, they are unpersuasive.[5]

Plaintiffs first explore the topic of claim accrual through two decisions discussing bank failures. See ECF No. 39 at 6-9 (citing Ariadne Fin. Servs. Prop. Ltd. v. United States, 133 F.3d 874 (Fed. Cir. 1998); Plaintiffs in Winstar-Related Cases, 37 Fed. Cl. 174 (1997) (subsequent history omitted)). According to plaintiffs, Ariadne stands for the proposition that a takings claim accrues when the property owner is "'sufficiently convinced'" that its property has been taken by the government. Id. at 8 (quoting Ariadne, 133 F.3d at 880). The claim accrual ruling in Campbell is in no way undermined by this proposition. By July 5, 2009, plaintiffs were "sufficiently convinced" by the issuance of the Sale Order that allegedly coercive acts of the government had resulted in a Sale Order that explicitly extinguished their successor liability claims.

Plaintiffs then attempt to find support for their attack on the court's claim accrual analysis by referencing Palazzolo v. Rhode Island, 533 U.S. 606 (2001). ECF No. 39 at 9. The court finds no parallel between the administrative exhaustion requirement stated in Palazzolo, 533 U.S. at 620-21, and the timing in this case of the alleged coercion by the federal government of Old GM and the bankruptcy court. For this reason, plaintiffs' citation to Palazzolo does not undermine the court's reliance on Branch and Acceptance for its claim accrual analysis.

Finally, plaintiffs turn to Smith v. United States, 709 F.3d 1114 (Fed. Cir. 2013). ECF No. 39 at 10-11. The statute of limitations issue in Smith was predicated on three judicial takings, i.e., the issuance of orders by three distinct courts that disbarred the appellant. 709 F.3d at 1116. Giving the Smith opinion the reading most favorable to plaintiffs here, the Federal Circuit held that a judicial taking occurs, and the plaintiff's takings claim accrues, when the final judicial order, such as a disbarment order, is issued. Id. at 1117. Unlike Smith, however, this case does not involve an allegation of a judicial taking. Thus, any "final order" rule that might be discerned in Smith does not contradict the court's claim accrual analysis in Campbell.[6]

---

[5]   The court limits its consideration to binding precedent cited by plaintiffs, see supra note 1, and does not revisit arguments that the court has addressed in earlier sections of this opinion.

[6]   The claim accrual question in Smith did not focus on the difference between an order that was not final and a final order. Instead, the Federal Circuit weighed the appellant's arguments that: (1) accrual occurred only once the United States Supreme Court issued its judicial takings decision in Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection, 560 U.S. 702 (2010); and (2) accrual of

4.      Claim Accrual Summary

The court has reviewed all of plaintiffs' arguments challenging the court's dismissal of their takings claims on timeliness grounds.  The alternative accrual dates set forth in the proposed Second Amended Complaint and plaintiffs' briefs are not well-founded.  Nor have plaintiffs shown any legal error in the analytical framework employed by the court in <u>Campbell</u>.  Because the court's claim accrual ruling in <u>Campbell</u> does not evince legal error, any mistake of fact, or a manifest injustice, plaintiffs' motion for the reconsideration of the court's RCFC 12(b)(1) dismissal of their claims must be denied.

B.      Property Interest

Plaintiffs also contend that the court erred when it found that plaintiffs' complaint did not present a plausible takings claim.  Plaintiffs' arguments in this regard are rather amorphous and difficult to categorize.  Three distinct topics emerge from plaintiffs' briefs, however.

First, plaintiffs urge the court to accept, as their last word on this subject, a finalized definition of the property interest taken by the government during the GM bankruptcy proceedings.  ECF No. 35 at 14.  Second, plaintiffs attempt to convince the court that their property interests were not "highly contingent."  <u>Id.</u> at 7, 14-15; ECF No. 39 at 13.  Third, plaintiffs suggest that the property right which was taken by the government "'inhered' in Plaintiffs" long before the government began its interventions in the GM bankruptcy proceedings.  ECF No. 35 at 15.

The court will address each of these topics in turn.  As a threshold matter, however, the court notes that plaintiffs' challenge to the court's RCFC 12(b)(6) ruling in <u>Campbell</u> rests largely on an attempt to reframe the legal right that was allegedly taken by the United States, and to convince the court that this legal right is more substantial than the court believed.  Although this reframing of plaintiffs' claims is superficially supported by attorney argument, the undisputed facts of the GM bankruptcy ultimately determine the plausibility of plaintiffs' takings claims.  <u>See, e.g.</u>, <u>Iqbal</u>, 556 U.S. at 678 (stating that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.") (citations omitted).  Here, to put it bluntly, the pen is not mightier than the well-established facts of this case.  <u>See</u> <u>Campbell</u>, 134 Fed. Cl. at 770-71 (noting that the background facts of this case are well-established).  The particular articulation of

---

new judicial takings claims took place when the attorney's appeals of the courts' disbarment orders were rejected.  <u>Smith</u>, 709 F.3d at 1116-17.

plaintiffs' property interest proffered by plaintiffs in their briefing is of far less importance than the facts underlying their takings claims.

 1. Finalized Definition of Plaintiffs' Property Interest

The court thoroughly examined the nature of plaintiffs' property interest in Campbell, and noted that plaintiffs' description of that property interest was not always consistent. 134 Fed. Cl. at 767-69, 774-76 & n.11. The court found that the most accurate, and, indeed, the only possible property interest that could have been taken from plaintiffs by the government in the GM bankruptcy was embodied in plaintiffs' "'rights to assert successor liability claims against New GM.'" Id. at 774 (quoting ECF No. 4 at 5). The court specifically held that no other property interest would satisfy the analytical framework for a coercive taking, citing A & D Auto, 748 F.3d at 1152-53. Campbell, 134 Fed. Cl. at 775.

Plaintiffs now seek to define their property interest differently. First, they cite to "their last brief," ECF No. 32, which included the following definition of plaintiffs' property interest:

> Plaintiffs' legally-protected interest is their right to compensation -- from any source -- for personal injuries caused by product defects in cars manufactured by Old GM.

Campbell, 134 Fed. Cl. at 775 (quoting ECF No. 32 at 8). Second, plaintiffs elaborate on this preferred description of their property interest, as follows:

> Plaintiffs' essential view, as expressed in [their] last brief, was that a "cause of action" can be a cognizable property interest under the Takings Clause when it protects their right to compensation for bodily injuries caused by defective cars manufactured by Old GM.

ECF No. 35 at 14. The court is confessedly at a loss to discern the finalized definition that plaintiffs propose for the property interest taken by the United States in the GM bankruptcy. In any case, plaintiffs' legal conclusion as to the nature of their property interest does not control here.

It is abundantly clear that before the GM bankruptcy, plaintiffs possessed personal injury claims against Old GM, and potential successor liability claims against a successor company, should one be created. As of the entry of the Sale Order, the property interest that was subtracted from plaintiffs' potential and existing rights was the right to bring successor liability claims against New GM. The description of this property interest in the First Amended Complaint, ECF No. 4 at 5, is the only accurate statement of the property interest that is at issue in this suit. For this reason, the court does not defer to

any legal conclusion that might be discerned in plaintiffs' motion for reconsideration regarding the finalized definition of their property interest.[7]

## 2.    Highly Contingent Property Interest

Plaintiffs next argue that the court erred in finding that their property interest was highly contingent and, thus, not cognizable under the Takings Clause.  ECF No. 35 at 14-17.  In support of this assertion, plaintiffs point to additional factual allegations in the proposed Second Amended Complaint.  ECF No. 39 at 13 (citing to ECF No. 35-1 at 4-6, 22-23).  Plaintiffs also contend that Campbell "misplaces reliance" on Acceptance and that Acceptance is distinguishable from this case.  ECF No. 35 at 16-17.  Plaintiffs' argument, sometimes framed as a contention that the United States lacked discretion to not rescue Old GM, ECF No. 35 at 14, 17; ECF No. 39 at 13, is not persuasive.

In their motion for reconsideration, plaintiffs failed to point to any specific facts in their proposed Second Amended Complaint which indicated that the United States lacked discretion to abstain from a rescue of Old GM.  Defendant responded that the government reviewed several new allegations of fact in the proposed Second Amended Complaint and found no new evidence that the United States lacked discretion to intervene in Old GM's financial crisis.  See ECF No. 37 at 15 ("Plaintiffs' proposed 'jurisdictional facts' simply restate, in conclusory fashion, their position that the Government did not have discretion in whether to provide rescue financing to GM during the financial crisis."), 17 ("Nothing in plaintiffs' proposed second amended complaint points to new evidence in support of their conclusion that the Government lacked discretion in whether to provide rescue financing to GM; instead, they simply repeat their positions that the Government had no choice but to exercise its discretion to do so.").  Defendant concluded that these conclusory statements of fact did not contradict the court's finding that the government's intervention was discretionary.  Id. at 17-18.

Plaintiffs' reply brief specifically identifies the new allegations of fact in the proposed Second Amended Complaint which, in their view, establish that the government lacked discretion to abstain from an intervention in Old GM's financial crisis.[8]  ECF No.

---

[7]    Plaintiffs' proposed Second Amended Complaint, like the First Amended Complaint, continues to describe plaintiffs' property interest as their right to bring successor liability claims against New GM.  See ECF No. 35-1 at 2-3, 7-9, 11-16, 20, 31-33, 35-38, 41-44, 46-59.

[8]    Because the specific paragraphs relied upon by plaintiffs were not identified until plaintiffs filed their reply brief, the government was not afforded a reasonable opportunity to respond to this particular argument.  The proposed Second Amended Complaint contains 245 paragraphs, of which approximately 65 are new or substantially

39 at 13 (citing ECF No. 35-1 ¶¶ 6-8, 10-14, 75-76).  As the court reads the first three paragraphs cited by plaintiffs, federal authorities are alleged to have had strong, if not irresistible, motivation to intervene in Old GM's financial crisis.  ECF No. 35-1 ¶¶ 6-8.  The next five paragraphs cited by plaintiffs allege that a 363 sale, largely funded by the United States Treasury, was the only alternative to a disastrous liquidation of Old GM.  Id. ¶¶ 10-14.  The last two paragraphs cited by plaintiffs allege that the federal government never seriously considered that liquidation of Old GM could be permitted, because Old GM was too important to the nation's economy.  Id. ¶¶ 75-76.

     Thus, the proposed Second Amended Complaint contains additional factual allegations which must be accorded all favorable inferences due plaintiffs.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).  These factual allegations support the view that the United States had little choice but to rescue Old GM.  Plaintiffs' legal conclusion, however, that the United States lacked discretion in its decision to fund the 363 Sale and to create New GM is not entitled to favorable inferences, however.  E.g., Iqbal, 556 U.S. at 678; Papasan, 478 U.S. at 286.  Until the Sale Order was entered by the bankruptcy court on July 5, 2009, the United States possessed considerable discretion over its intervention in the GM bankruptcy and the structure and conditions of the 363 Sale.  This legal conclusion is supported by numerous factual allegations in plaintiffs' proposed Second Amended Complaint, as well as in the recitation of facts in the decisions of the bankruptcy court and the district court.

     Even if the United States Department of the Treasury had no feasible options other than injecting massive funding into GM and structuring a bankruptcy solution that would keep GM largely intact, it is clear that Treasury exercised discretion at every step of this process.  As noted in Campbell, by the time that Old GM filed for bankruptcy, the United States had overpowering leverage over Old GM due to the government's infusions of cash into the company.  134 Fed. Cl. at 768.  Old GM's board, as a consequence, acceded to every demand of the United States regarding the content of its bankruptcy filings, including the company's request for a 363 sale and the proposed terms of the Sale Order.  See ECF No. 35-1 at 18-34.  As the GM bankruptcy moved forward, the United States effectively controlled the timing of the 363 Sale.  Id. at 37-41.  The government also threatened to let Old GM fail if the government's requirements for the timely conclusion of the 363 Sale were not met.  Id. at 37-40.

     Given this factual background, the court does not find that the United States lacked discretion regarding the rescue of Old GM.  The bankruptcy court considered and gave credence to the government's representations that it would not continue to fund Old

_____

modified paragraphs.  See ECF No. 35-2 (red-line version of proposed Second Amended Complaint).

GM unless the 363 Sale went through as specified and as scheduled.  Sale Opinion, ECF No. 4-2 at 30-31.  The district court commented that the extinguishment of plaintiffs' successor liability claims in the Sale Order was a key element of the 363 Sale insisted upon by Old GM and the other parties to the GM bankruptcy.  In re Motors Liquidation Co., 428 B.R. at 60-62.  Although the liquidation of Old GM may have been unthinkable, as plaintiffs allege, it is clear that the United States exercised considerable discretion as to how it would intervene in Old GM's financial crisis.  For this reason, discretionary acts of the United States affected the "highly contingent" property interests that plaintiffs allege were taken by the government in the GM bankruptcy.

Plaintiffs raise only one other substantive challenge to the court's finding that their property interest was too contingent, because of the government's discretionary control over that property interest, to sustain a takings claim.  Plaintiffs argue that the court improperly applied Acceptance to conclude that their property interest was highly contingent.  ECF No. 35 at 16-17.  According to plaintiffs, "Acceptance is distinguishable . . . because it did not involve Government actions that were necessary -- not discretionary -- to avoid the disastrous national economic consequences that would result from the liquidation of Old GM."  Id. at 17.  Plaintiffs also contend that Acceptance merely "stands for the unremarkable proposition that an interest in selling certain products in interstate commerce is not a cognizable property interest for purposes of the Takings Clause."  Id. (citations omitted).  The court does not agree that Campbell misapplied Acceptance.

First, as noted supra, plaintiffs' suggestion that the United States had no discretion over its intervention in Old GM's financial crisis is not accurate.  Second, the analogy between the property interest discussed in Acceptance, and plaintiffs' right to bring successor liability claims against New GM, is sound.  These property interests resembled each other because neither property right would exist absent a discretionary act of the government.  In Acceptance, the agency would need to abstain from exercising its right to reject a particular type of sale subject to regulatory approval, and here the federal government would need to abstain from conditioning the 363 Sale on the extinction of plaintiffs' successor liability claims.  Campbell, 134 Fed. Cl. at 778-79.  Notwithstanding any factual distinctions that could be drawn between Acceptance and this case, highly contingent property interests, such as plaintiffs' right to bring successor liability claims against New GM, fail to support a takings claim if they are as contingent as the property interest discussed in Acceptance.[9]

---

[9]       Nor do plaintiffs address the other precedential cases discussed in Campbell which show that plaintiffs' property interests are too contingent to support a takings claim.  See 134 Fed. Cl. at 778-79 (citing Bair v. United States, 515 F.3d 1323 (Fed. Cir. 2008); Adams v. United States, 391 F.3d 1212 (Fed. Cir. 2004)).

3.      Date That Plaintiffs' Property Interest "Inhered"

Plaintiffs also challenge the court's finding that plaintiffs' property interest arose at about the same time that it was extinguished by operation of bankruptcy law.  As the court stated in <u>Campbell</u>:

> [A]pplying <u>A & D Auto</u>, the challenged government action in this suit was contemporaneous with plaintiffs' emergent right, created through the government bail-out of General Motors and the bankruptcy proceedings, to bring successor liability claims against New GM.  In these circumstances, the powers accorded the bankruptcy court by section 363 inhered in and limited plaintiffs' property interest, because that highly contingent interest, from its inception, was targeted for -- and was subject to -- extinguishment by the conditions that the government imposed on the 363 Sale.  A highly contingent property interest of this kind cannot support a takings claim.

134 Fed. Cl. at 776.  Plaintiffs argue, instead, that their property interest inhered at the time of their automobile accidents involving Old GM vehicles.  ECF No. 35 at 15-16.

To the extent that plaintiffs' arguments in this regard are founded on their finalized (but unclear) definition of their property interest as their "right to compensation for bodily injuries," <u>id.</u> at 14, the court does not accept this formulation as indicative of the property interest that might have been taken by the United States during the GM bankruptcy.  <u>See supra</u>.  The only property interest at issue in this suit is plaintiffs' right to bring successor liability claims against New GM.  That property interest did not exist in 1994, 2004 and 2006, when the accidents at issue in this suit occurred.  <u>See</u> <u>Campbell</u>, 134 Fed. Cl. at 777-78 & n.12.  Plaintiffs' attempts to repackage the property interest taken by the United States as a personal injury claim arising under Michigan state law as early as 1994 does not comport with the facts of the GM bankruptcy, as discussed <u>supra</u>.

Plaintiffs have not cited any authority that supports their contentions as to when their property interests inhered.  Generic pronouncements as to the nature of property are not relevant to this issue.  <u>Cf.</u> ECF No. 35 at 16 (citing <u>Ruckelshaus v. Monsanto Co.</u>, 467 U.S. 986, 1003 (1984); <u>United States v. Gen. Motors Corp.</u>, 323 U.S. 373, 378 (1945)).  Nor does plaintiff's reliance on <u>Aureus Asset Managers, Ltd. v. United States</u>, 121 Fed. Cl. 206, 213 (2015), alter the court's analysis.  ECF No. 35 at 14; ECF No. 39 at 14.  <u>Aureus</u> does not address the date when a property interest inheres in a takings claim plaintiff.  None of plaintiffs' arguments persuade the court that their property interest inhered before the United States intervened in the GM bankruptcy.

4.   Property Interest Not Cognizable under the Takings Clause

For all of the above reasons, the court finds that plaintiffs' property interests were too contingent to support plausible takings claims.  The court has considered all of plaintiffs' arguments to the contrary, and finds no reason to reconsider its property interest holding in <u>Campbell</u> or to amend its judgment.[10]  Because the court's property interest ruling in <u>Campbell</u> does not evince legal error, any mistake of fact, or a manifest injustice, plaintiffs' motion for the reconsideration of the court's RCFC 12(b)(6) dismissal of their claims must be denied.

C.      Proposed Second Amended Complaint

In the foregoing analysis of plaintiffs' motion for reconsideration, the court considered plaintiffs' proposed Second Amended Complaint as if it were filed and as if it superseded the First Amended Complaint.  Dismissal of this case under RCFC 12(b)(1) was still warranted on timeliness grounds, and dismissal of this case, in the alternative under RCFC 12(b)(6), was still warranted because plaintiffs' takings claims were not plausible.  The court thus finds that amendment of the complaint would be futile.  Plaintiffs' motion to amend the complaint, ECF No. 35, must therefore be denied.

V.      Conclusion

For the reasons stated in this opinion, plaintiffs' combined motion for reconsideration, motion to amend the judgment, and motion for leave to file a second amended complaint, ECF No. 35, is **DENIED**.

IT IS SO ORDERED.

s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Judge

---

[10]     The court notes plaintiffs' disagreement with the distinctions the court drew in <u>Campbell</u> between the property interests in this case and the property interests discussed in <u>A & D Auto</u>.  ECF No. 35 at 15-16.  For the reasons stated in <u>Campbell</u>, plaintiffs' property interests are more contingent than the contract rights held by the plaintiffs in <u>A & D Auto</u>.  134 Fed. Cl. at 776-77 & n.12.